CHARLES GOLDSBOROUGH AND WINFIELD S. DELLONE *vs.* EMORY L. COBLENTZ AND W. HARRY HALLER, TRUS- TEES, ET AL.

*Sales in equity : private contract; rescission of order of ratifica- tion. Re-sale : to higher bidder; first purchaser no right to except. Equity : duty to protect infants suo motu.*

C. G. had agreed with the trustees to purchase for $12,500.00 two lots, they being part of a trust under separate jurisdic- tions; a new contract was made for one of the properties at $7,250.00; this contract was signed by C. G. and the trus- tees. The sale was ratified by the Court on July 28th, 1910; the purchaser objecting to the title, the proceedings were amended and a new order passed October 18, 1910, rescinding the former order which ratified the sale, and authorizing the withdrawal from the files of the trustees' petition for ratifi- cation, and granted leave for other proceedings. At the sug- gestion of the attorney of the trustees, the valuation was changed from $7,250.00 to $8,250.00. The new proceedings were completed and a decree entered for the sale of the prop- erty, at public or private sale, for not less than $8,250.00. K. offered $8,350.00 for the property; the former purchaser excepted to the ratification of the sale, and from an order overruling his exception an appeal was taken. It was *held,* that since it was at the suggestion of G. that the ratification of the former sale had been set aside, whatever protection the Court had owed to him in virtue of the decree of ratification was ended.                                    p. 331

Although the original contract for the two properties had been indivisible, it was divided by the act of the parties.    p. 332

After the first bid accepted had been withdrawn by agreement, the Court was free to accept the highest bid offered.    p. 332

The fact that no party in interest was in Court objecting to
the acceptance of G.'s bid was immaterial; the fact that no
one objects never justifies a Court in committing a wrong.

p. 332

Where there are infants in interest a court of equity is bound
of its own motion to protect them.                    p. 332

*Decided June 24th, 1911.*

Appeal from the Circuit Court of Frederick County, sit-
ting in equity (PETER and MOTTER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE,
PATTISON, URNER and STOCKBRIDGE, JJ.

*Thomas N. Copenhaver* and *William H. Surralt,* for the
appellants.

*Albert S. Brown* (who filed a brief for the Trustees), and
*Alfred J. Carr* (who with *Charles H. Quigley* filed a brief
for Geo. L. Kelly, the appellee purchaser), for the appel-
lees.

STOCKBRIDGE, J., delivered the opinion of the Court.

On the 10th of May, 1910, Julian S. Carter, professing to
act for and on behalf of the appellant, Charles Goldsborough,
entered into a written agreement with Emory L. Coblentz
and W. Harry Haller, as trustees, by which Mr. Golds-
borough was to purchase from the trustees two lots of ground
on Eutaw Place and one on Linden Avenue for the sum of
$12,250.

The Eutaw Place properties were part of a trust being
administered under the Circuit Court for Frederick County,
while the Linden Avenue property was under the jurisdic-
tion of one of the Equity Courts of Baltimore City.   For
this reason on or about the seventh day of July a new con-
tract for the sale of the Eutaw Place properties was entered
into, for a named consideration of $7,250.   This second
agreement was dated as of the same date as the original

contract, and signed by the same persons as the first agreement, and by Mrs. Fannie Fitzpatrick the *cestui que* trust for life. The sale as proposed to be made by the second agreement was finally ratified and confirmed by the Court on the 28th day of July.

Then followed a succession of correspondence and interviews between Emory L. Coblentz, one of the trustees, and Caughy, Hearn and Carter, as representing the supposed purchaser, Goldsborough. These disclosed an objection to the title on the part of the attorney of the purchaser, in response to which on August 30th, the trustee, Coblentz, declined to recognize the alleged objection to the title, and proposed that "the whole matter might be considered off." Instead of this, further correspondence and interviews ensued, and sometime in October an understanding was reached by which the wishes of Mr. Copenhaver, acting as attorney for Mr. Goldsborough in the examination of the title, were acceded to. These involved a material amendment of the equity proceeding under which the trustees were to make title, and which took the form of an order passed on the 18th of October, 1910, rescinding and annulling the order of July 28, which confirmed the sale negotiated between the trustees and the appellant Goldsborough, and authorizing the withdrawal from the files, of the petition of the trustees for the ratification of the sale, and granting leave to the trustees to institute such further proceedings as they might desire to effect a sale of the property.

At this point the relative positions of the parties were the same as they had been on the 7th July, when the second agreement for a sale was made.

At sometime, the date of which is not entirely certain, but prior to the taking of the testimony under the new proceedings which had been begun, the valuation of the Eutaw Place properties was, at the suggestion of Mr. Caughy, changed from $7,250 to $8,250, but the record does not disclose any written agreement entered into at this new price.

It is the undisputed testimony in this case that at the interview between Mr. Caughy and Mr. Coblentz, at which the agreement was reached to take the proceedings suggested by Mr. Copenhaver, Mr. Coblentz stated that on effect of the proceeding would be to "involve a risk of Mr. Goldsborough being subjected to competitive bids;" the attention of Messrs. Caughy, Hearn & Carter or their counsel was called to this condition in the letters of Mr. Coblentz of October 24th and October 25th.

The new equity proceedings were completed, and on the third of December a decree was entered directing the sale of the Eutaw Place properties at public or private sale, and if by the latter mode, providing that the sale should not be for a less sum than $8,250. On December eighth Mr. Coblentz wrote a letter to Messrs. Caughy, Hearn & Carter, stating that the sale of the properties in question had been reported to Mr. Goldsborough, but that the trustees had received an offer of $8,300, from Francis L. Klemm on behalf of George L. Kelly. It was not true as stated in the letter that the sale had been reported to Mr. Goldsborough, and two days later Mr. Coblentz corrected this statement in a letter to Caughy, Hearn & Carter, and proffered an explanation of his prior statement, and on the same day filed a report of sale of the property to Kelly. To this sale Mr. Goldsborough excepted, and from the order overruling his exceptions, this appeal has been taken.

The facts have been thus detailed at some length because a full understanding of them will materially aid in reaching a sound conclusion.

The appellant relies upon four propositions: 1st. That the final ratification on July 28th of the proposed sale to Goldsborough gave him a title which the faith of the Court was pledged to protect; this ignores the fact that in compliance with his own request that ratification had been set aside and annulled, and whatever protection the Court had heretofore placed itself in a position of owing, was at an end.

2nd. That the original contract for the Eutaw Place and Linden Avenue properties was indivisible. The complete answer to this is that the parties had by agreement divided it. 3rd. This is based on the matter of inadequacy of price. This is not a question which enters into the present case at all. When the order of October 18th had been passed, there was no bid whatever before the Court, and the Court was free to accept the highest bid offered, from whomever it might come. 4th. That no party in interest is in Court objecting to the acceptance of Mr. Goldsborough's bid. That is entirely immaterial. The fact that no one appears and objects can never justify the Court in committing a wrong, and especially when, as in this case, there are the interests of infants which a Court of Equity is bound of its own motion to protect.

There had been no concealment of any material fact from the Court, and the only manner in which the Court could perform its plain duty was to authorize and approve a sale at the highest price offered for the properties, which was the bid of George L. Kelly. The present case is closely analogous to the case of *Neale* v. *Peverley,* 114 Md. 198, and the law applicable to the present controversy is fully laid down in that case, and the authorities there cited.

> *The order of the Court below from which this appeal was taken is, therefore affirmed, with costs to the appellee.*